## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DR. DOROTHY C. PRIOR | : | |
| | : | |
| Plaintiff, | : | CASE NO. |
| | : | |
| v. | : | TRIAL BY JURY DEMANDED |
| | : | |
| STATE OF DELAWARE | : | |
| DIVISION OF DEVELOPMENTAL | : | |
| DISABILITIES SERVICES, LYNDA | : | |
| LORD, KAMIN GIGLIO, | : | |
| MARISSA CATALON, AND | : | |
| COURIE NOURIE IN | : | |
| THEIR INDIVIDUAL | : | |
| CAPACITIES. | : | |
| | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

## THE PARTIES

1. Plaintiff, Dr. Dorothy C. Prior ("Plaintiff") was, at all times relevant to this complaint, a resident of Glen Mills, Pennsylvania.

2. Defendant, Division of Developmental Disabilities Services, ("Defendant DDDS") is a public corporation organized and existing under the laws of the State of Delaware.

3. Lynda Lord, is a Delaware resident, Director of Applicant Services and Plaintiff's current supervisor.

1

4.     Kamin Giglio, is a Delaware resident, Assistant Director of Community Services, and Plaintiff's prior supervisor.

5.     Marissa Catalon, is a Delaware resident, DDDS Director and has worked in a supervisory capacity with Kamin Giglio.

6.     Corie E. Nourie, is a Delaware resident, and DDDS Director of Community Services and Kamin Giglio's 's current supervisor.

## JURISDICTION

7.     The jurisdiction of this court is invoked pursuant to the First Amendment of the United States Constitution; Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1983 ("Section 1983"); the Delaware Whistleblower's Act. As such, the Court has original jurisdiction over this complaint pursuant to 28 U.S.C. §§ 1331 and 1337.

## VENUE

8.     The unlawful employment practices alleged herein were committed within the State of Delaware. Accordingly, venue lies in the United States District Court for the District of Delaware under 42 U.S.C. §1339(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.     Prior to the filing of this action, the plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on or

about December 9, 2020 which occurred during her employment with State of Delaware Division of Developmental Disabilities Services ("DDDS").

10. On or about July 27, 2021, the EEOC issued Plaintiff a "Right to Sue Notice" which was received by Plaintiff on or about July 30, 2021. *EEOC Right to Sue Notice* attached as Exhibit 1.

## FACTS

11. Plaintiff is an African American female.

12. By all accounts, Plaintiff has been a hardworking and devoted employee with impeccable integrity during her employment with DHSS/DDDS since September 2017.

13. Plaintiff began her employment as a Psychologist with DHSS/DDDS on September 17, 2017.

14. As Psychologist for DDDS, Plaintiff was a member of the Community Services leadership staff and participated in bi-monthly leadership meetings. Plaintiff also co-chaired weekly Peer Review of Behavior Interventions/Supports ("PROBIS") meetings.

### DR. PRIOR'S PARTICIPATION IN SHARON BERTIN'S DISCRIMINATION COMPLAINT

15. A year after employment, in the Fall of 2018, Plaintiff was promoted to Director of Clinical Supports and assumed responsibility for the Nursing and Behavior Analyst (BA) Units of DDDS, approximately 20 staff total.

16. As Director of Clinical Supports, Plaintiff had four direct reports (NCC Nurse Supervisor, Kent/Sussex Nurse Supervisor, NCC Behavior Analyst Supervisor, Kent/Sussex Behavior Analyst Supervisor).

17. Plaintiff's salary and benefits remained the same after assuming the additional responsibilities of supervising the clinical units.

18. Immediately upon entering the Director of Clinical Supports role, Plaintiff was approached by two of her direct reports about staff who were being undercompensated.

19. Both staff members who made complaints of being undercompensated, NCC Nurse Supervisor and DDDS Behavior Analyst, are middle aged, African American women.

20. The Kent/Sussex BA Supervisor informed Plaintiff that her direct report, a DDDS Behavior Analyst, was earning several thousand dollars less than her peers in the region, who are white, despite performing identical work tasks.

21. The NCC Nurse Supervisor, Sharon Bertin, informed Plaintiff that she had been responsible for contract management for several years although this task is not stated in her job description as described by the State of Delaware.

22. Plaintiff learned that her direct report, the NCC Nurse Supervisor, had been earning approximately $20,000 less than the job title under which contract management is stated, as described in another State of Delaware job description under the Nursing career ladder.

23. NCC Nurse Supervisor also informed Plaintiff that she was not allowed to join the nurse's union, although her white colleague with the exact same job and responsibilities (Kent/Sussex Nurse Supervisor) had been able to access the benefit.

24. Bertin, a black female, was asked to provide coverage for the entire state when her colleague, Kent/Sussex Nurse Supervisor, transferred to another job within DDDS.

25. Bertin informed Plaintiff that she would be willing to do so, so long as she was reclassified and given a pay increase.

26. Bertin was not reclassified nor did she receive an appropriate salary increase, all while being required by DDDS to provide coverage for the entire state.

27. Due to this, Bertin filed a grievance with DDDS to have the issue addressed.

28. Plaintiff participated in her discrimination complaint by testifying at Bertin's grievance hearing because she believes that her pay increase would have been adjusted if she was not a black female.

### DR. PRIOR COMPLAINTS ABOUT FRAUD, REGULATORY VIOLATIONS, AND DATA MANIPULATION

29. In late 2019, Plaintiff participated in a leadership meeting during which staff acknowledged the co-mingling of funds that belonged to many Service Recipients from DDDS. Staff acknowledged that this practice is fraudulent as it conceals the financial resources of DDDS Service Recipients from Medicaid and Social Security.

30. Plaintiff had continually complained about this fraudulent practice to her supervisors.

31. Throughout 2019, 2020 and 2021, DDDS staff members have confided in Plaintiff about the expectation from DDDS leadership that they misrepresent the financial resources of Service Recipients to ensure that they appear to meet eligibility requirements for Medicaid and the Home and Community Based Services (HCBS) Waiver. Staff have also stated that Service Recipients do not receive access to their money when needed or requested, and that it is often difficult to obtain a ledger balance for Service Recipients when requested.

32. Up until April 22, 2020, Plaintiff represented DDDS as a co-chair on the PROBIS committee which reviews and approves behavior support plans submitted by contracted Consultative Behavior Analysts.

33. In that role, Plaintiff's duties and responsibilities included ensuring all behavior support plans were person-centered and clinically sound while maximizing and preserving clients' individual rights.

34. In addition, Dr. Prior and her co-chair were responsible for ensuring that all plans were in compliance with DDDS policies and procedure along with federally mandated Medicaid Rules and Regulations.

35. In addition to Plaintiff's support of Bertin and reporting of fraudulent activity, she had also taken a stand against approving Behavior Support Plans that did not meet Medicaid rules and DDDS policies.

36. In late 2019 and early 2020, Plaintiff was in constant conflict with Kamin Giglio and Marissa Catalon when she or her PROBIS co-chair, MaryCarol Beard, did not approve plans that were in conflict with both State and Federal Rules and Regulations. In 2019, Marissa Catalon had promised the DDDS Task Force that all outstanding behavior plans would be approved. This was impossible because many outstanding behavior plans had not yet been completed and submitted by the contracted providers. Other behavior plans were in various states

of revision or lacked signatures consenting to the interventions, restrictions and services.

37. When behavior plans were not completed and approved as promised to the DDDS Task Force by Marissa Catalon, she and her colleagues, Kamin Giglo and Cory Nourie, resorted to manipulating data about PROBIS outcomes.

38. The week of March 1, 2020, MaryCarol Beard informed Plaintiff of disclosures made to her direct report regarding the unethical behavior of DDDS leadership. On March 4, 2020, Plaintiff informed Kamin Giglio and Courie Nourie, in writing via e-mail, that she and her co-chair learned about the manipulated data being reported to the DDDS Task Force.

39. This correspondence also informed that the PROBIS co-chairs had learned of a directive to a NCC employee, by Kamin Giglio, never to include the PROBIS co-chairs on e-mails containing PROBIS outcome data. The NCC staff was also directed by Kamin Giglio to document and report back on the Plaintiff and her co-chair's actions and PROBIS related work, per MaryCarol Beard.

40. Plaintiff refused to approve DDDS Behavior Supports Plans which violated the below Medicaid rules and requirements, both State and Federal:

    a.     DDDS Behavior Support Plan Policy, Section H (No seclusion).

    b.     Medicaid Settings Rules (individual has keys to door) and 16 (prior interventions & supports including less intrusive methods, assurance that interventions and supports will not cause harm)

    c.      DDDS Client Rights and Responsibilities Policy, (Right to the least restrictive and most appropriate living situation)

    d.      Delaware Code, DHSS Health and Safety, Title 16 Section 1121 (30) …Each resident shall be free from verbal, physical or mental abuse, cruel and unusual punishment, involuntary seclusion, withholding of monetary allowance, withholding of food, and deprivation of sleep.

41.    Plaintiff confronted DDDS regarding these violations and because she had staff under her line of supervision who were manipulating data.

**RETALIATION: DR. PRIOR IS DEMOTED AND STRIPPED OF DUTIES**

42.    On April 23, 2020, as a result of her concern and bringing up the issue of manipulated data and Plaintiff's support of Bertin's discrimination complaint, Plaintiff was demoted and transferred to Applicant Services by Corie Nourie and Giglio during a videoconferencing meeting.

43.    Plaintiff was informed that the clinical units would be taken away from her supervision and would now report to Giglio.  Plaintiff inquired why she, a Psychologist, would no longer be supervising the clinical units.  Giglio did not give an answer, and stated, "They will now report to me!"

44.    Approximately one week after being demoted and transferred to Applicant Services, Plaintiff was also threatened with termination in a memo from Labor Relations dated April 29, 2020 via Lord and Catalon, in retaliation for her protective activity.

45. With the transfer of position, Dr. Prior's duties have been greatly reduced to mere data entry in excel spreadsheets

46. Upon being demoted and transferred to Applicant Services, Plaintiff was directed by her supervisor, Lynda Lord, to remove data from spreadsheet entries which confirmed that individuals were not eligible for DDDS services, as described by the DDDS eligibility regulation in Delaware.

47. Plaintiff's refusal to manipulate the DDDS determination data entry resulted in Lord stating, "I'll just take it out," followed by subsequent denials of having given the directive and additional retaliation from Lord and Catalon.

48. For example, Lord denied giving Plaintiff the directive to remove information that accurately reflected what is absent in eligibility charts.

49. During a one-on-one phone supervision call on January 27, 2021, Lord denied giving Plaintiff a directive to change data. When Plaintiff did not acquiesce, Lord lost control and screamed, "You just create your own thoughts! I asked you not to repeat incorrect information that I've already corrected. Marissa is right, you just make up things and believe them!"

50. Plaintiff has been falsely accused of underperforming yet does not have a Performance Plan despite having been transferred and demoted into her current role over a year and a half ago. Repeated requests for a formal Performance Plan with reasonable specifications have been ignored.

51.     Other employees not engaged in Plaintiff's protected activity are aware of their job tasks as they are documented in a formal Performance Plan.

52.     Lord utilized Plaintiff's professional license to purchase psychological assessments for her use, however, Lord and Catalon refused to allow Plaintiff, the only psychologist within DDDS, access to the professional instruments which would only be of use to Plaintiff, a psychologist.

53.     Aside from being demoted and transferred from her previous role as Director of Clinical Supports and member of leadership within Community Services, Plaintiff is not being allowed to perform job duties as clearly stated in the State of Delaware's Psychologist job description.

54.     Plaintiff's prior colleagues have been instructed by Giglio, Lord, Catalon, and Nourie to not communicate with her.

55.     Plaintiff has also submitted sick time and training requests that continually get denied while other employees who did not participate in the above protected activity, got their sick time and training requests approved.

56.     Plaintiff has been isolated from her colleagues, as they are no longer able to utilize her, a psychologist, for case consultation without asking permission from Community Service Directors, Kami Giglio and Stacy Watkins.

57.     In addition, Plaintiff's standard requests to work from home have been summarily denied for no reason other than to retaliate against Plaintiff for her

protected activity. Other DDDS staff are able to telecommute 4 days per week. Plaintiff has forwarded requests for a Performance Plan and telecommute agreement up to the DHSS Secretary and Deputy Secretary, as suggested by Labor Relations Supervisor, Carla Mitchell-Penny without reasonable steps for resolution.

## **COUNT I – RETALIATION AGAINST DDDS. LYNDA LORD AND KAMIN GIGLIO, CATALON, AND NOURIE**
**(First Amendment/Section 1983)**

58. Plaintiff re-alleges and adopts the allegations of paragraphs 1-57 above as if fully set forth herein.

59. Plaintiff engaged in the protected activity of participating and supporting state employees who were facing racial discrimination.

60. Plaintiff engaged in the protected activity of reporting violations of state and federal regulations.

61. Plaintiff was retaliated against by the State of Delaware, Giglio, Lord, Catalon, and Nourie, acting under color of law for exercising her protected activity of participating in investigations of discrimination and reporting violations of state and federal regulations.

62. Defendants were aware of Plaintiff's protected activity, and were motivated, in whole or in part, to retaliate against Plaintiff because of the protected activity.

63. Catalon, Nourie, Lord and Giglio were directly involved in the decision to retaliate against Plaintiff for her protected activities.

64. Moreover, Catalon, Nourie, Lord and Giglio have chosen to direct continued hostility and heightened scrutiny toward Plaintiff in the subsequent months, and have sought to isolate, ostracize, and undermine Plaintiff, as well as to deny her opportunities for growth and advancement.

65. The conduct of Catalon, Nourie, Lord and Giglio has violated Plaintiff's clearly established constitutional rights, of which a reasonable person would have known.

66. The conduct in which Defendants engaged would deter a reasonable person from engaging in lawful protected activities.

67. Plaintiff's request for relief as to the DDDS in this Count is limited to prospective injunctive relief, as she requests the reinstatement of her employment, and requests for prospective training and analysis with the goal of addressing discrimination and retaliation.

## COUNT II- RETALIATION

68. Paragraphs 1 through 67 are hereby realleged and incorporated herein by reference as if fully set forth herein..

69. Such acts as described above by Defendant, State of Delaware, DDDS, its agents and employees constitute unlawful retaliation against Plaintiff

for supporting and participating in investigations of Bertin's complaint of discrimination.

70. As a direct and proximate result of Defendant's unlawful retaliation, by and through its agents and employees, Plaintiff, Dr. Dorothy Prior, has been injured and has suffered and will continue to suffer pain, fear, humiliation, injury to professional reputation, anxiety, depression, mental anguish, emotional distress, physical manifestation of anxiety and lost wages and lost benefits.

### COUNT III: VIOLATION OF DELAWARE WHISTLEBLOWERS' PROTECTION AGAINST DDDS

71. Paragraphs 1 through 70 are hereby realleged and incorporated herein by reference as if fully set forth herein.

72. An employer shall not discharge, threaten, or otherwise discriminate against an employee because the employee reports verbally or in writing to the employer or to the employee's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur.

73. Defendant DDDS discriminated against Plaintiff by retaliating against her because she reported violations of Medicaid rules and requirements, financial fraud, both State and Federal, along with the manipulation of Medicaid data.

**WHEREFORE**, Plaintiff requests this Honorable Court enter a judgment in her favor and against the Defendants as follows:

     a.     Declare the conduct engaged in by the Defendant to be in violation of the Plaintiff's statutory rights.

     b.     Order the reinstatement of the Plaintiff at a level which is commensurate with her time and experience previously held by the Plaintiff, or in lieu thereof granting the plaintiff front pay to compensate her for pecuniary losses she will suffer as a result of defendant's wrongful conduct.

     c.     Award the plaintiff back pay compensation for her pecuniary losses from the date of the wrongful conduct described herein until the date of any judgment.

     d.     Award the plaintiff sufficient funds to compensate her for her losses, pain and mental suffering, which cannot otherwise be compensated by equitable relief.

     e.     Award the plaintiff compensatory such as front pay and punitive damages not otherwise specified.

     f.     Award the plaintiff any and all other liquidated damages, which would make the plaintiff "whole".

     g.     Award the plaintiff attorney fees, the costs of this action, pre-judgment and post judgment interest, and

     h.     Such other and further relief as this Court deems just and proper.

**THE POLIQUIN FIRM, LLC**

<u>/s/ Ronald G. Poliquin</u>
Ronald G. Poliquin, Esq.
DE Bar I.D. No. 4447
1475 S. Governors Ave.
Dover, DE 19904
(302) 702-5500
*Attorney for Plaintiff Dr. Dorothy C. Prior*

Dated: October 22, 2021

16